1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| SAMUEL TARABOCHIA, an individual,<br><br>           Plaintiff,<br><br>    v.<br><br>THURSTON COUNTY, a municipality;<br>PETER FELICIANO, CHRISTOPHER MARX,<br>ANGELA "ANGIE" FORONNOA AKA<br>ANGELA FORNEA, VIC HERBERT, "C."<br>WHITE, MIKE FENTON, TED BRYAN,<br>DANA HANSON, CHRIS "DOE," and JOHN<br>and JANE DOES 1-5, in their individual<br>capacities,<br><br>           Defendants. | No.<br><br>COMPLAINT FOR DAMAGES UNDER 42<br>U.S.C. § 1983 |

## I.   <u>NATURE OF THE CASE</u>

1.1    Plaintiff Samuel Tarabochia, now age 20, was detained in 2014 in the custody of the Thurston County Juvenile Detention Center for a minor probation violation.  A few weeks into his 30-day detention, Defendants Chris Marx, Vic Herbert, Angie Foronna (AKA Angie Fornea), and "C." White, forcibly restrained Samuel for ordinary teenage misbehavior (taking a piece of cake from another detainee's tray) and placed him in isolation for approximately six days.  Defendants Mike Fenton, Ted Bryan, Dana Hanson, and Chris "Doe" had knowledge of Samuel's solitary confinement and the authority to countermand it, but chose to allow Samuel to suffer in isolation for six days.

MACDONALD HOAGUE & BAYLESS<br>705 Second Avenue, Suite 1500<br>Seattle, Washington  98104<br>Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

1.2     Under the Fourteenth Amendment to the United States Constitution, juvenile detainees may be placed in solitary confinement only in extreme circumstances, such as to control violent offenders who present imminent risks to themselves or others.  Under the Eighth Amendment, juveniles may not be subjected to cruel and unusual punishment and are treated categorically different from adults.

1.3     Scientific studies of the impact of solitary confinement have shown that it can have significant deleterious effects on the mental health of juveniles, and many jurisdictions have abandoned the practice altogether in order to conform with constitutional and societal standards for the treatment of juvenile detainees.  In Samuel's case, the impact of solitary confinement was immediately apparent.  Shortly after being placed in solitary confinement, Samuel dramatically decompensated mentally, exhibiting clear signs of mental illness.  Numerous Detention Center staffers witnessed and documented Samuel's descent into mental illness, but did nothing to remove him from the environment that was causing it.

1.4     Even after the Defendants released Samuel from solitary confinement, they held him in "out alone" status, another form of isolation, and failed to help him obtain the mental health treatment he so obviously needed.  Eight days after the Defendants released Samuel from isolation, and 14 days after Samuel began showing signs of mental illness while in isolation, Defendants finally referred him to mental health evaluation and treatment, and transported him to a mental health facility outside of the Detention Center, but significant, lasting damage was already done.

1.5     Samuel now brings suit under 42 U.S.C. § 1983, seeking compensation for constitutional injuries and associated emotional distress that resulted from this unwarranted and unconstitutional detention in solitary confinement for six days, and the subsequent deliberate indifference to his need for mental health evaluation and treatment.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

| | |
|---|---|
| 1 | |

## II.    PARTIES

2.1     Plaintiff Samuel Tarabochia is a citizen of the State of Washington and a resident of Thurston County.  Samuel was a minor at all times relevant to the allegations contained herein.

2.2     Defendant Chris Marx was a staff member at Thurston County Juvenile Detention Center at all times material to the allegations contained herein.  At all times material, he acted under color of law.

2.3     Defendant Vic Herbert was a staff member at Thurston County Juvenile Detention Center at all times material to the allegations contained herein.  At all times material, he acted under color of law.

2.4     Defendant Angela "Angie" Foronna was a staff member at Thurston County Juvenile Detention Center at all times material to the allegations contained herein.  At all times material, she acted under color of law.  Public records sometimes refer to her as Angie Fornea.

2.5     Defendant "C." White was a staff member at Thurston County Juvenile Detention Center at all times material to the allegations contained herein.  At all times material, he or she acted under color of law.  Public records list Defendant White's first initial, but not his or her full first name.

2.6     Defendant Mike Fenton was a staff member with supervisory authority at Thurston County Juvenile Detention Center at all times material to the allegations contained herein.  At all times material, he acted under color of law.

2.7     Defendant Ted Bryan was a staff member with supervisory authority at Thurston County Juvenile Detention Center at all times material to the allegations contained herein.  At all times material, he acted under color of law.

2.8     Defendant Dana Hanson is a staff member with supervisory authority at Thurston County Juvenile Detention Center.  At all times material, he or she acted under color of law.

2.9     Defendant Chris "Doe" was the Detention Manager at Thurston County Juvenile Detention Center and had supervisory authority at all times material to the allegations contained

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 3

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

1   herein.  At all times, he or she acted under color of law.  Public records do not identify

2   Defendant's last name, so he or she is referred to herein as Defendant Chris "Doe."

3       2.10    Defendant Peter Feliciano was a Thurston County Juvenile Court Probation

4   Officer at all times material to the allegations contained herein.  At all times material, he acted

5   under color of law.

6                    III.    **JURISDICTION AND VENUE**

7       3.1     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8       3.2     Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C.

9   § 1391 because at least some of the Defendants reside in this judicial district and because the

10  events and omissions giving rise to the claims alleged herein occurred within the Western

11  District of Washington.

12                  IV.    **FACTUAL ALLEGATIONS**

13  **4.1     The County has an official policy, pattern, and/or practices of placing
    juveniles in solitary confinement for ordinary misbehavior.**

14

15  4.1.1    Defendant County operates Thurston County Juvenile Detention Center.

16  4.1.2    The County has established policies, patterns, and practices that govern the

17  management of the Detention Center.  These policies, patterns, and practices include rules that

18  govern the conduct of the youths who are detained and establish corrective actions Detention

19  Center staff may take in the event of violations of those rules.

20  4.1.3    Plaintiff attempted to obtain the County's policies and procedures regarding

21  solitary confinement used at the Detention Center through both Washington's Public Records

22  Act and General Rule 31.1, which allows access to "court" administrative records.  In response,

23  the Thurston County Superior Court, the agency the County has chosen to operate its Detention

24  Center, has taken the position that it is not subject to these statutory disclosure obligations and

25  need not divulge the Detention Center Policy Manual and other written procedures related to the

26  County's use of solitary confinement on juveniles.

27

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 4

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

4.1.4    The County allows staff to place youths in solitary confinement.  The County designates at least two cells as "isolation cells" that are reserved for the solitary confinement of youths who commit disciplinary infractions.

4.1.5    Whether pursuant to or in violation of County policies, practices, and procedures, Detention Center staff routinely place youths in solitary confinement as punishment for ordinary misbehavior.

**4.2    Defendants placed Plaintiff in solitary confinement for a minor disciplinary infraction.**

4.2.1    In the summer of 2014 then-17-year-old Plaintiff Samuel Tarabochia was on probation.  Samuel had spent part of the summer working in Alaska on his family's commercial fishing boat, and by all accounts was flourishing.

4.2.2    Upon his return, in late August 2014, Samuel met with Defendant Peter Feliciano, who was Samuel's probation officer assigned by the County.  During one conversation, Mr. Feliciano took it up himself to inquire with Samuel about a childhood episode where Samuel had been sexually molested by a cousin.  Though Mr. Feliciano had learned of the molestation from the Tarabochia family (whom he knew socially), the Tarabochia family did not know that Mr. Feliciano planned to confront Samuel.

4.2.3    In the days after Mr. Feliciano asked about the molestation, Samuel used marijuana and thereby violated the terms of his probation.  After this was discovered in a urinalysis, on August 29, 2014, Samuel was sent to the Detention Center for a period of 30 days.

4.2.4    On August 29, 2014, Mr. Feliciano met with Samuel's cousin (the purported molester) and his mother (Samuel's aunt), for "two hours" according to Mr. Feliciano's notes. Despite the cousin's claims that there was "never any touching . . . or any other sexual contact," Mr. Feliciano recorded that he "made it clear to [the cousin] that Sam was affected by their sexual contact, what ever [sic] it was."

4.2.5    On September 4, 2014, after Samuel was in County custody, Mr. Feliciano again inquired with Samuel about the childhood episode of sexual molestation by his cousin.  In that

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 5

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

1    conversation, despite Samuel's reluctance to talk about it, Mr. Feliciano explored the details of

2    the incident and conveyed to Samuel that he had met with the cousin and Samuel's aunt during

3    the previous week.

4        4.2.6   After Mr. Feliciano's discussion with Samuel about this sexual molestation,

5    Samuel felt bad and uncomfortable and dwelled on the incident and the memories of being

6    molested.

7        4.2.7   On September 11, 2014, Defendants Chris Marx, Vic Herbert, Angie Foronna

8    (AKA Angie Fornea), and "C." White confronted Samuel during lunch because he was allegedly

9    hovering over other youths near their food.  Samuel eventually took a piece of cake from the tray

10   of another youth.

11       4.2.8   Defendants Marx and Herbert instructed Samuel to go to his room.  When he did

12   not go, they forced him to the ground and restrained him with the assistance of Defendants

13   Foronna and White.  Samuel did not resist their efforts to restrain him.

14       4.2.9   Defendants Marx, Herbert, Foronna, and White then took Samuel to an isolation

15   cell, where they placed him indefinitely.  According to the County's Incident Report Form, these

16   Defendants placed Samuel in isolation "because [] he failed to follow staff and then Supervisors

17   directed [him] to head back to his room."  Defendants John and Jane Doe 1-5 may have assisted

18   in Samuel's restraint and placement into solitary confinement.

19       4.2.10  Defendants Marx, Herbert, Foronna, and White acted pursuant to the County's

20   policies, patterns, and practices when placing Samuel in solitary confinement.  Defendant

21   Feliciano learned of the placement in isolation, despite knowing about the recent discussions

22   with Samuel about the molestation and the related adverse impact on Samuel.

23       4.2.11  Samuel's misbehavior did not justify his placement in solitary confinement.  As

24   evident from the Incident Report Form, he posed no safety risk to any youths or Detention

25   Center staff, did not act out violently, and did not make any threats.  He also did not resist the

26   Defendants' efforts to restrain him.

27

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 6

1    4.2.12  Samuel was not evaluated, interviewed, or otherwise given an opportunity to

2    explain himself before Defendants Marx, Herbert, Foronna, and White placed him in solitary

3    confinement.  Nobody informed Samuel of how long he should expect to remain in solitary

4    confinement, or what he needed to do to be released to the general population of the Detention

5    Center.  Defendants or other Detention Center staff also did not provide Samuel with a copy of

6    the Detention Center's rules and regulations when he asked.

7    4.2.13  Defendant Herbert and at least one other member of the Detention Center staff

8    who completed the Incident Report Form forwarded that documented decision to use solitary

9    confinement to Defendants Mike Fenton, Ted Bryan, and Dana Hanson.

10    4.2.14  Defendants Fenton, Bryan, and Hanson had the authority to countermand

11    Samuel's solitary confinement, but did not take any steps to do so despite the self-evident minor

12    nature of the misbehavior that led to him being placed there.

13    4.2.15  Defendant Feliciano visited with Samuel while he was in the isolation cell on the

14    evening of September 11, 2014.  He noticed that Samuel was acting "strange," that he seemed

15    "to dissociate," and that he had "a tough time tracking the conversation and finishing thoughts."

16    4.2.16  Defendant Feliciano spoke with Defendant Chris Doe, the Detention Manager,

17    about Samuel's situation later that evening.  Despite Defendant Feliciano's observations, and the

18    fact that he had confronted Samuel with the episode of childhood sexual molestation and Samuel

19    was adversely affected by the experience, neither Mr. Feliciano nor Mr. Doe took any action to

20    remove Samuel from solitary confinement. Defendants John and Jane Doe 1-5 from the

21    Detention Center staff witnessed Samuel's prolonged solitary confinement and similarly took no

22    steps to remove him from isolation.

23    4.2.17  Samuel stayed in solitary confinement for a total of approximately six continuous

24    days.

25    4.2.18  The isolation cell was windowless and cramped.  The toilet clogged and was not

26    promptly repaired.  While placed in isolation, Samuel had no contact with his peers or his family.

27

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 7

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

1   4.2.19   Defendants did not allow Samuel to attend school while he was in solitary

2   confinement.  Samuel was provided no opportunity to contest this deprivation of his property

3   interest in education.

4   4.2.20   Because of the conditions in isolation, Samuel decompensated mentally.

5   Detention Center staff noticed that he exhibited "bizarre" behaviors.

6   4.2.21   Despite numerous documented observations by Detention Center staff that

7   Samuel exhibited signs of serious mental illness, and inquiries with Defendant Feliciano by

8   Samuel's family about his well-being, Defendants failed to remove Samuel from solitary

9   confinement until September 16, 2014, after he had been held there for six days.

### 4.3   The County's policies, patterns, and practices caused Plaintiff to be placed in solitary confinement, in violation of the Eighth and Fourteenth Amendments.

10
11

12   4.3.1   Due process rights afforded to juveniles under the Fourteenth Amendment to the

13   U.S. Constitution prohibit the use of solitary confinement or isolation except in extreme

14   circumstances, such as to control violent offenders who present an imminent risk to themselves

15   or others.

16   4.3.2   Juveniles adjudicated delinquent have protections under the Eighth Amendment

17   to the U.S. Constitution against cruel and unusual punishment and are treated categorically

18   different from adults with criminal convictions.

19   4.3.3   The National Commission on Correctional Health Care (NCCHC) takes the

20   following positions: (1) "The inherent restriction in meaningful social interaction and

21   environmental stimulation and the lack of control adversely impact the health and welfare of all

22   who are held in solitary confinement." (2) "Even those without a prior history of mental illness

23   may experience a deterioration in mental health, experiencing anxiety, depression, anger,

24   diminished impulse control, paranoia, visual and auditory hallucinations, cognitive disturbances,

25   obsessive thoughts, paranoia, hypersensitivity to stimuli, posttraumautic stress disorder, self-

26   harm, suicide, and/or psychosis." (3) "These consequences are especially harmful to juveniles

27   whose brains are still developing and those with mental health problems."   For these reasons, the

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 8

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

1    NCCHC recommends:  "Juveniles, mentally ill individuals, and pregnant women should be

2    excluded from solitary confinement of any duration."

3        4.3.4   The federal government during the Obama administration ceased the practice of

4    using solitary confinement for juveniles and for inmates serving time for low-level infractions.

5    The federal government took this action because of data reflecting that the still-developing brains

6    of juveniles face increased susceptibility to lasting damage from imposition of solitary

7    confinement.

8        4.3.5   At least 21 states have prohibited the use of solitary confinement on juveniles for

9    disciplinary purposes.

10       4.3.6   Consistent with these data and reforms, courts have recognized that "there is a

11   broad consensus among the scientific and professional community that juveniles are

12   psychologically more vulnerable than adults." *V.W. by & through Williams v. Conway*, 236 F.

13   Supp. 3d 554, 583 (N.D.N.Y. 2017) (granting preliminary injunction to stop use of solitary

14   confinement of minors in New York county); *see also*, *e.g.*, *Miller v. Alabama*, 567 U.S. 460,

15   132 S. Ct. 2455, 2467 (2012) (Youth "is a time of immaturity, irresponsibility, impetuousness[,]

16   and recklessness.  It is a moment and condition of life when a person may be most susceptible to

17   influence and to psychological damage.") (internal quotation marks and citations omitted)

18   (alteration in original);  *Graham v. Florida*, 560 U.S. 48, 68 (2010) ("[D]evelopments in

19   psychology and brain science continue to show fundamental differences between juvenile and

20   adult minds."); *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (recognizing "comparative

21   immaturity and irresponsibility of juveniles"); *State v. Houston-Sconiers*, 188 Wash. 2d 1, 9, 391

22   P.3d 409, 414 (2017) ("Because 'children are different' under the Eighth Amendment and hence

23   'criminal procedure laws' must take the defendants' youthfulness into account, sentencing courts

24   must have absolute discretion to depart as far as they want below otherwise applicable SRA

25   ranges and/or sentencing enhancements when sentencing juveniles in adult court, regardless of

26   how the juvenile got there.") (citing *Miller-Graham-Roper* trilogy).

27       4.3.7   Despite these contemporary standards, and the widespread knowledge that

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 9

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

1    solitary confinement can inflict serious harm on juveniles, the County has adopted policies,

2    patterns, and practices permitting the routine use of solitary confinement to punish juveniles for

3    ordinary misbehavior.

4        4.3.8    To the extent the County's policies contain safeguards for the benefit of juvenile

5    detainees, the County is deliberately indifferent to a pattern and practice of placing juveniles in

6    solitary confinement or isolation without enforcement of such safeguards.

7        4.3.9    By operation of County policy and the practice of not enforcing safeguards

8    contained in its policies, the County allowed the use of solitary confinement of juveniles as

9    described herein that posed an unreasonable risk of serious damage to the health of its juvenile

10   detainees including Samuel.  The County's operation of its Detention Facility, with this policy

11   and practice in place, was and is in deliberate indifference to these serious risks.

12       4.3.10  The County's placement of Samuel in solitary confinement, as described herein,

13   was unwarranted and contrary to the Eighth and Fourteenth Amendments.

14       4.3.11  The County's policy, pattern, and practice of permitting solitary confinement of

15   juveniles caused Samuel to suffer the constitutional deprivations described herein.

16       4.3.12  The pattern and practice of non-enforcement of any safeguards for juveniles

17   placed in solitary confinement that may have been adopted by the County caused and

18   exacerbated the constitutional deprivations described herein and his associated pain, suffering,

19   and emotional distress.

20   **4.4    Defendants were deliberately indifferent to Plaintiff's need for mental health
21       evaluation and treatment during and after his detention in solitary
         confinement.**

22       4.4.1    Upon his release from solitary confinement on September 16, 2014, Samuel was

23   still exhibiting bizarre behaviors.

24       4.4.2    Numerous Detention Center staff members, including, but not limited to,

25   Defendant Feliciano and Defendants John and Jane Doe 1-5, noticed these behaviors and

26   documented them on or around the date Samuel was released from solitary confinement.

27

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 10

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

4.4.3    After releasing him from the isolation cell, Defendants continued to hold Samuel in "out alone" status, which is a lesser form of isolation that only allowed him to leave his cell alone, and for short periods.

4.4.4    Samuel further decompensated mentally while on "out alone" status following his release from solitary confinement.

4.4.5    Defendant Feliciano visited with Samuel on multiple occasions while he was on "out alone" status and observed his altered mental state, which manifested in bizarre behaviors such as screaming and laughing uncontrollably for no reason.

4.4.6    Detention Center staff, including Defendants, kept Samuel on "out alone" status despite observing the deterioration of his mental health.

4.4.7    While Samuel was on "out alone" status he was able to have visits from his family, but he remained separated from the visitor by a plexiglass barrier.  During one visit, Samuel's father (Dan Tarabochia) visited him and witnessed Samuel's mental decompensation directly, as he made strange facial expressions and mumbled words his father couldn't understand.   Samuel also asked whether his father had taken on his childhood molester as his son and repeated the molester's name.  Samuel was distraught and confused.  He said to his father that his jailers were treating him different than before.  He also told his father that he had asked for the rules and regulations of the Detention Center, but the guards refused to give them to him.

4.4.8    Mr. Tarabochia inquired with Mr. Feliciano why Samuel was kept so long in isolation, and that he believed Samuel was having serious problems.  Mr. Tarabochia also informed Mr. Feliciano that he had consulted with Samuel's doctor who believed, based on his description, that Samuel was "falling apart" and that Samuel needed to get out.  Mr. Feliciano did nothing to hasten any medical health evaluation of Samuel despite obvious signs of decompensation.

4.4.9    On September 25, 2014, at least 14 days after he first began exhibiting signs of mental illness, the County finally released Samuel for mental health evaluation and treatment.

COMPLAINT FOR DAMAGES UNDER 42 U.S.C.  § 1983 - 11

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

4.4.10  During the period beginning with Samuel's initial detention in solitary confinement and ending when the County released him for mental health evaluation and treatment, Defendants were deliberately indifferent to the deconditioning of his mental health, which constituted a serious medical need.

4.4.11  Defendants caused Plaintiff's injuries associated with his prolonged solitary confinement by initially confining him without cause, then refusing to remove him from confinement as his condition deteriorated, and further by failing to seek adequate psychiatric and medical attention more promptly, despite the obvious signs of mental deterioration.

4.4.12  On account of Plaintiff's prolonged solitary confinement, Defendants have inflicted pain, suffering, and emotional distress on Plaintiff, in addition to causing him to lose employment and education opportunities, for which he is entitled to damages.

## V.   CAUSES OF ACTION

5.1     By virtue of the facts set forth above, Defendants are liable for deprivation of civil rights of Plaintiff Samuel Tarabochia, guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, because Defendants subjected Plaintiff to solitary confinement pursuant to County policies, patterns, and practices, for reasons that fall short of the extreme circumstances tolerated by substantive due process such as addressing public safety concerns.

5.2     By virtue of the facts set forth above, Defendants are liable for deprivation of civil rights of Plaintiff Samuel Tarabochia guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, because Defendants subjected Plaintiff to solitary confinement and deprived him of educational materials and opportunities pursuant to County policies, patterns, and practices, without notice or opportunity to be heard, in violation of his procedural due process rights.

5.3     By virtue of the facts set forth above, Defendants are liable for deprivation of civil rights of Plaintiff Samuel Tarabochia, guaranteed by the Eighth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, because Defendants subjected Plaintiff to solitary

COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 - 12

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701

1  confinement pursuant to County policies, patterns, and practices and otherwise under

2  circumstances described herein, which amounts to cruel and unusual punishment.

3

4

5  **VI.   REQUEST FOR RELIEF**

6  WHEREFORE, Plaintiff requests relief as follows:

7  6.1    Compensatory damages;

8  6.2    Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and to the

9  extent otherwise permitted by law;

10  6.3    Such other relief as may be just and equitable.

11  DATED this 22nd day of January, 2018.

12                         MacDONALD HOAGUE & BAYLESS

13                  By: s/*David J. Whedbee*
                         David Whedbee, WSBA #35977
14                       davidw@mhb.com

15                  By: s/*Sam Kramer*
                         Sam Kramer, WSBA #50132
16                       samk@mhb.com

17                       Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 - 13

**MacDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11585.1 la090701